IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TREGG DUERSON, Personal Representative of the Estate of DAVID R. DUERSON, Deceased<br><br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>NATIONAL FOOTBALL LEAGUE, INC., a corporation ("NFL"); and RIDDELL, INC., a corporation, f/k/a EN&T ASSOCIATES, INC., and RIDDELL SPORTS GROUP, INC., a corporation (collectively "RIDDELL")<br><br>　　　　　　　Defendants. | No.　1:12-cv-2513 |

## NOTICE OF REMOVAL

　　　　　PLEASE TAKE NOTICE that, for the reasons set forth below, Defendant National Football League ("NFL"), by its undersigned attorneys, files this Notice of Removal to remove the claims against them in this action from the Circuit Court of Cook County, Illinois, to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. §§ 1367, 1441 and 1446. Removal is made pursuant to 28 U.S.C. § 1331 on the basis of federal question jurisdiction. The grounds for removal are as follows:

**I.　　INTRODUCTION AND BACKGROUND**

　　　　　1.　　On March 13, 2012, the NFL was served by plaintiff, Tregg Duerson, Personal Representative of the Estate of David R. Duerson, with a Complaint (the "Complaint") filed in the Circuit Court of Cook County, Illinois, No. 2012L002043. Copies of the Complaint and other documents filed in this action are annexed as **Exhibit A**.

2. The Complaint alleges that Dave Duerson played in the NFL from 1983 to 1993 and suffered from "progressive brain degeneration" in the 10 years prior to his death, which was allegedly caused by "concussive brain trauma and/or playing through these brain traumas during his NFL playing career." (Compl. Count I, ¶¶ 5, 8-9, 19.) The Complaint further purports to allege, among other things, that the NFL failed to "implement policies to prevent Dave Duerson from returning to a game or practice in which he sustained a head injury," failed to "regulate and monitor practices, games, equipment and medical care so as to minimize the long term risk associated with repetitive brain injuries suffered by Dave Duerson," and "continuously refuted, denied, and inaccurately professed that chronic brain damage in former NFL football players was not a result of brain trauma sustained in the players' NFL careers." (Compl. Count I, ¶ 23(f), (h), Count II, ¶¶ 44, 56.) The Complaint alleges, pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/1, *et seq.*, causes of action for negligence (Counts I and IV), fraudulent concealment (Count II) and conspiracy (Count III). (Compl. Count I, ¶ 27, Count II, ¶ 66, Count III, ¶ 66. Count IV, ¶ 57.) The Complaint also purports to allege, pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/1, *et seq.*, causes of action for strict liability for manufacturing and design defects, and failure to warn (Counts V and VI), against Riddell, Inc. f/k/a EN&T Associates, Inc. and Riddell Sports Group, Inc. (together, the "Riddell Defendants"). (Compl. Count V, ¶ 24, Count VI, ¶ 23.) Plaintiff seeks recovery of damages "for a sum in excess of the minimal jurisdictional limit for the Law Division for the Circuit Court of Cook County, Illinois. (Compl. pp. 6, 17, 19, 29, 32, 36).

3. The relationship between the NFL and Dave Duerson was governed by collective bargaining agreements ("CBAs") that were executed and operative during his

career.[1] The CBAs are the product of exhaustive arm's-length negotiations between the NFL Management Council (the exclusive bargaining representative of the NFL) and the NFL Players Association (the exclusive bargaining representative of NFL players), and "represent[] the complete understanding of the parties on all subjects covered [t]herein." (CBA Art. II § 1 (1982-86; 1993).) The CBAs include, among other terms, provisions relating to player medical care and safety, equipment and dispute resolution.

## II. GROUNDS FOR REMOVAL

4. This Court has original jurisdiction of this action under 28 U.S.C. § 1331 because the action is one that is founded on a claim or right "arising under the Constitution, laws, or treaties of the United States." A defendant may remove an action to federal court under 28 U.S.C. § 1441 if the complaint presents a federal question, such as a federal claim. *See Avco Corp.* v. *Aero Lodge No. 735*, 390 U.S. 557, 560, 88 S. Ct. 1235, 1237, 20 L. Ed. 2d 126 (1968).

5. Federal question jurisdiction exists in this case based on complete preemption under section 301 of the Labor Management Relations Act ("LMRA") of plaintiff's claims. *See Sluder* v. *United Mine Workers of Am., Int'l Union*, 892 F.2d 549, 556 (7th Cir. 1989) ("Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal

---

[1] Duerson played in the NFL from 1983 to 1993. (Compl. Count I, ¶¶ 8-9.) Thus, Duerson played football in the NFL pursuant to the 1982 CBA, which was in effect from July 16, 1982 to August 31, 1987, and the 1993 CBA, which was signed prior to the 1993 season. Following the expiration of the 1982 CBA, but before the effective date of the 1993 CBA, certain provisions of the expired CBA, including the arbitration provision, remained in effect. *See Sherwin* v. *Indianapolis Colts, Inc.*, 752 F. Supp. 1172, 1174-75 & n.2 (N.D.N.Y. 1990) ("[T]he [expired] 1982 CBA continues to govern the relationship of the parties at least with respect to arbitration since the parties have continued to honor and utilize the arbitration provisions of the 1982 CBA.").

claim, and therefore arises under federal law. . . . Thus, state-law claims preempted by section 301 are properly removable to federal court despite a plaintiff's failure to plead explicitly a federal cause of action.").[2]

6. To the extent that any claims in the Complaint that purport to arise out of the periods not governed by CBAs are not preempted, these claims "form part of the same case or controversy." 28 U.S.C. § 1367. This Court thus has supplemental jurisdiction over all claims. *See Ervin* v. *OS Restaurant Servs., Inc.*, 632 F.3d 971, 979 (7th Cir. 2011) ("Section 1367(a) grants the district courts supplemental jurisdiction to hear all other claims that are so related to the claims over which they have original jurisdiction that they form part of the same Article III case or controversy.").

7. Section 301 of the LMRA provides that the federal courts have original jurisdiction over all "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). The Supreme Court has held that "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." *Allis-Chalmers Corp.* v. *Lueck*, 471 U.S. 202, 211, 105 S. Ct. 1904, 1911, 85 L. Ed. 2d 206 (1985); *see also Sluder* v. *United Mine Workers of America, Int'l Union*, 892 F.2d 549, 555-56 (7th Cir. 1989) (holding that plaintiff's negligence claim was preempted because the claim "can be resolved only by defining the precise nature of

---

[2] The CBAs were signed by the NFL Management Council, an entity created by the NFL for the purpose of collective bargaining. The NFL is bound by the CBAs' terms and may invoke section 301 preemption because plaintiff's claims arise under the CBA and require the Court to interpret numerous CBA provisions. *See Atwater* v. *Nat'l Football League*, 626 F.3d 1170, 1178-79 (11th Cir. 2010); *Stringer* v. *Nat'l Football League*, 474 F. Supp. 2d 894, 901-92 (S.D. Ohio 2007).

the duty assumed by [Defendant], and that duty can be defined only by reference to the collective bargaining agreement"). Thus, section 301 preempts tort claims seeking to vindicate "state-law rights and obligations that do not exist independently of [collective bargaining] agreements" and also claims "substantially dependent upon analysis of the terms of [a collective-bargaining] agreement." *Allis-Chalmers*, 471 U.S. at 213, 220; *Scholl* v. *Rogers Ready Mix*, No. 03 C 50495, 2004 WL 793552, at *2 (holding that plaintiff's promissory estoppel and fraud claims were preempted by section 301).

8. Here, plaintiff's claims are preempted by section 301 because the rights plaintiff seeks to vindicate were created by the CBAs, and are not based on an independent duty "owed to every person in society." *See United Steelworkers of Am.* v. *Rawson*, 495 U.S. 362, 370-71, 110 S. Ct. 1904, 1910, 109 L. Ed. 2d 362 (1990) (holding in the context of a labor dispute involving unionized employees that, absent an independent duty running from defendants "to every person in society," any such duty to plaintiffs must arise out of the CBA); *see also Tifft* v. *Commonwealth Edison Co.*, 366 F.3d 513, 540-41 (7th Cir. 2004) (holding that plaintiffs' wrongful termination claims were preempted because the statute under which plaintiffs' purported to bring the claims "does not provide the plaintiffs with rights independent of the CBA").

9. Plaintiff's claims also are preempted because those claims, and the scope of any duty owed by the NFL, are "inextricably intertwined with consideration of the terms of [the CBAs]" or "substantially dependent" on an analysis of the relevant provisions of the CBAs. *Allis-Chalmers*, 471 U.S. at 213, 215, 220; *see also Sluder*, 892 at 552 ("Plaintiffs' 'artfully pled' [negligence] claims are 'inextricably intertwined' with a construction of the collective bargaining agreement and thus preempted by Section 301 of the Labor Management Relations Act.") *Brown* v. *Keystone Consol. Indus., Inc.*, 680 F. Supp. 1212,

5

1218 (N.D. Ill. 1988) (holding that plaintiffs' fraudulent misrepresentation claim was preempted because "any determination of plaintiffs' claim for fraudulent misrepresentation necessarily rests on an interpretation of the terms of the [labor] agreement"); *Stringer* v. *Nat'l Football League*, 474 F. Supp. 2d 894, 909-10 (S.D. Ohio 2007) (wrongful death claim brought by decedent's widow against the NFL based on, among other things, the NFL's alleged failure to regulate adequately practices, games, equipment, and medical care to minimize the risk of heat-related illness, was preempted because the claim was "inextricably intertwined and substantially dependent upon an analysis of certain CBA provisions imposing duties on the clubs with respect to medical care and treatment of NFL players").

10. For example, adjudicating plaintiff's claims will hinge on provisions of the CBAs relating to player medical care, rule-making, and equipment safety. *See, e.g.*, NFL CBA Art. XXXI § 1 (1982-87), Art. XLIV § 1 (1993) (requiring physician on staff of Member Clubs to inform a player in writing if he has a physical condition that "could be significantly aggravated by continued performance"); NFL CBA Art. XXXI § 2 (1982-87), Art. XLIV § 2 (1993) ("[F]ull-time head trainers and assistant trainers . . . [must] be certified by the National Athletic Trainers association."); NFL Constitution and Bylaws Art. XIX § 19.5 (1970-2010) (requiring that the home team provide a doctor and ambulance for each game since the AFL-NFL merger);[3] NFL Constitution and Bylaws Art. XVII supplement 12 (1980), Art. XVII (1984-85), Art. XVII § 17.16(E) (1988-2010)

---

[3] *See Clarett* v. *Nat'l Football League*, 369 F.3d 124 (2d Cir. 2004) ("In the [CBA], the union agreed to waive any challenge to the Constitution and Bylaws and thereby acquiesced in the continuing operation of the . . . rules contained therein."); *see also Brown* v. *Nat'l Football League*, 219 F. Supp. 2d 372, 386 (S.D.N.Y. 2002) ("[The NFL Constitution and Bylaws were] bargained over and included within the scope of the CBA.").

("All determinations of recovery time for major and minor injuries must be by the club's medical staff and in accordance with the club's medical standards" for players categorized as "Reserve/Injured" on the Reserve List); NFL CBA Art. XI § 8 (1982-87), Art. XIII § 1(a) (1993) (creating a Joint Committee to study, among other things, player safety issues); Art. XI § 8 (1982-87), Art. XIII § 1(b)-(c) (1993) (mandating procedures for review, investigation and resolution of disputes involving proposed rule changes that "could adversely affect player safety"); Art. XI § 9 (1982-87), Art. XIII § 2 (1993) (inviting player representatives to the Competition Committee meetings "to represent the players' viewpoint on rules").  Indeed, a court considering wrongful death allegations brought by a decedent's wife similar to those alleged here determined that plaintiff's claim was substantially dependent on, and inextricably intertwined with, an analysis of CBA provisions concerning medical care and treatment of NFL players.  *See Stringer*, 474 F. Supp. 2d at 911.

11. A district court recently held that the NFL properly removed complaints containing claims substantially similar to those here.  *See Maxwell* v. *Nat'l Football League*, No. 11-cv-08394 R(MANx), Order at 2 (C.D. Cal. Dec. 8, 2011) (negligence claim against NFL preempted); *Pear* v. *Nat'l Football League*, No. 11-cv-08395 R(MANx), Order at 2 (C.D. Cal. Dec. 8, 2011) (same); *Barnes* v. *Nat'l Football League*, No. 11-cv-08395 R(MANx), Order at 2 (C.D. Cal. Dec. 8, 2011) (same).  The court, finding *Stringer* "to be persuasive" held that plaintiffs' negligence claims, premised, among other things, on allegations that the NFL failed "to ensure accurate diagnosis and recording of concussive brain injury so the condition can be treated in an adequate and timely manner," were preempted because "[t]he physician provisions of the CBA must be taken into account in determining the degree of care owed by the NFL and how it relates to

the NFL's alleged failure to establish guidelines or policies to protect the mental health and safety of its players." *Maxwell*, Order at 2; *Pear*, Order at 2; *Barnes*, Order at 2; Compl. Count I, ¶ 23 (e) (alleging that the NFL "fail[ed] to ensure rapid, accurate diagnosis of Dave Duerson's concussive brain injuries during his playing career"). Having determined that at least one federal claim was present, the court exercised supplemental jurisdiction over the remaining claims. *Maxwell*, Order at 2; *Pear*, Order at 2; *Barnes*, Order at 2.

12. Although plaintiff alleges that his claims are not preempted because he and "the next-of-kin of Dave Duerson are not signatories to the NFL/NFLPA Collective Bargaining Agreement," (Compl., Count I ¶ 68), it is well-settled that where, as here, the relationships between decedents and defendants are governed by collective bargaining agreements, the LMRA preempts wrongful death claims brought by estate representations or next-of-kin. *See, e.g.*, *Rawson*, 495 U.S. at 370-71 (wrongful death claims brought by the survivors of four deceased minors preempted where such claims "cannot be described as independent of the collective-bargaining agreement" because it was not a situation where defendants were "acting in a way that might violate the duty of reasonable care owed to every person in society."); *Zielke* v. *Int'l Bhd. Of Elec. Workers*, 1998 WL 102565, at *4 (N.D. Ill. Feb. 24, 1998) (holding that the wrongful death claim brought by decedent's widow against union was preempted by the LMRA because "however [plaintiff] parses her claim, it is clear that [the union] was connected to [the decedent's] unfortunate death due to the relationship between them, which was founded on the collective bargaining agreement"); *Stringer*, 474 F. Supp. 2d at 909-10 (wrongful death claim brought by decedent's widow against the NFL based on, among other things, the NFL's alleged failure to regulate adequately practices, games, equipment, and medical care to minimize the risk of heat-related illness, was preempted because the claim was

8

"inextricably intertwined and substantially dependent upon an analysis of certain CBA provisions imposing duties on the clubs with respect to medical care and treatment of NFL players").

### III. REMOVAL IS PROCEDURALLY PROPER

13. The Northern District of Illinois is the federal district in which the Circuit Court of Cook County, Illinois—where plaintiff filed his Complaint—is located.

14. This Notice of Removal is timely under 28 U.S.C. § 1446(b), which states that "notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based."

15. Written notice of the filing of this Notice of Removal will be provided to plaintiff, and a copy of this Notice will be filed in the appropriate state court, as required by 28 U.S.C. § 1446(d). This Notice of Removal is signed pursuant to Fed. R. Civ. Proc. 11. *See* 28 U.S.C. § 1446(a).

16. Counsel for the Riddell Defendants has consented to the removal of the action. All defendants thus have consented to removal of the action. *See Townsquare Media, Inc.* v. *Brill*, 652 F.3d 767, 770 (7th Cir. 2011) ("For cases governed by 28 U.S.C. § 1441(a)—the general statute authorizing removal from state courts to federal district courts of cases presenting claims arising under state law—all defendants must consent for removal to be effective.").

17. In filing this Notice of Removal, the NFL does not waive any defenses that may be available, including without limitation jurisdiction, venue, standing, or procedures for the disposition of this action in accordance with the terms of the CBA. Nor does the

NFL admit any of the factual allegations in the Complaint; rather, the NFL expressly reserves the right to contest those allegations at the appropriate time.

WHEREFORE, the NFL removes the above-captioned action brought against them in the Circuit Court of Cook County, Illinois.

Dated: April 5, 2012

                                              Respectfully submitted,

                                              /s/ Robert L. Michels
Dan Webb
Robert L. Michels
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601-9703
(312) 558-5600

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
*(Pro Hac Vice Applications to be filed)*
Brad S. Karp
Theodore V. Wells, Jr.
Beth A. Wilkinson
Lynn B. Bayard
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

*Attorneys for the National Football League*

## **CERTIFICATE OF SERVICE**

The undersigned counsel for the NFL certifies that on this Thursday, April 5, 2012, I caused a copy of the foregoing Notice of Removal to Federal Court to be mailed from my office at 35 West Wacker Drive, Chicago, Illinois, as designated below, to the following addresses:

Thomas A. Demetrio
Rene A. Torrado, Jr.
William T. Gibbs
Corboy & Demetrio, P.C.
Attorneys for Plaintiff
33 North Dearborn Street, 21st Floor
Chicago, Illinois 60602
(312) 346-3191
Firm No. 02329

Paul G. Cereghini
Bowman and Brooke LLP
2901 N. Central Avenue, Suite 1600
Phoenix, AZ 85012
(602) 643-2300

Vincent Galvin
Bowman and Brooke LLP
1741 Technology Drive, Suite 200
San Jose, CA 95110
(408) 279-5393

Marion V. Mauch
Bowman and Brooke LLP
879 West 190th Street, Suite 700
Gardena, CA 90248
(310) 768-3068

/s/ Robert L. Michels
Robert L. Michels