IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TREGG DUERSON, Personal Representative of the estate of David R. Duerson, Deceased )<br><br>Plaintiff, )<br><br>v. )<br><br>NATIONAL FOOTBALL LEAGUE, INC, RIDDELL, INC., and RIDDELL SPORTS GROUP, INC., )<br><br>Defendants. ) | No. 12 C 2513 |

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Tregg Duerson ("Duerson"), representing the estate of David R. Duerson, brought this wrongful death suit in state court. (Dkt. No. 1, Ex. A ("Compl.").) Duerson's complaint alleges that David Duerson, a former defensive safety for the 1985 Chicago Bears Super Bowl Championship Team, committed suicide last year as a result of brain damage he incurred while playing in the National Football League ("NFL"). (*Id.* Count I, ¶¶ 1, 19-20.) The complaint includes four counts against the NFL, including negligence (Count I), fraudulent concealment of the linkage between brain trauma and permanent brain damage (Count II), conspiracy to publish false information (Count III), and negligent failure to warn (Count IV). *Id.* The complaint also contains two counts against Riddell, Inc. and Riddell Sports Group, Inc. (collectively "Riddell"), the companies that manufactured the helmets David Duerson wore while playing professional football, including strict liability (Count V) and negligence (Count VI) for failure to warn of the defects in its helmet design. *Id.*

The NFL removed the case to federal court on April 5, 2012. (Dkt. No. 1.) Subsequently, this court denied the NFL's motion to stay this case pending a decision of the Panel on Multidistrict Litigation in MDL 2323 to consolidate this action with other pending federal cases, and ordered the parties to brief Duerson's motion to remand. (Dkt. No. 32.) For the reasons explained below, Duerson's motion to remand is denied.

## BACKGROUND

David Duerson was drafted by the Chicago Bears in 1983. (Compl., Count I, ¶ 8.) He played safety for the Bears from 1983-1989. (*Id.* ¶ 8.) David Duerson then spent the years 1990-1993 playing for the New York Giants and the Arizona Cardinals. (*Id.* ¶ 9.) During his eleven-year NFL career, David Duerson allegedly "sustained at least three (3) documented concussive brain traumas, in 1988, 1990 and 1992, as well as numerous undocumented concussive brain traumas." (*Id.* ¶ 11.) He played through the concussions because he was unaware that doing so could cause any harm. (*Id.* ¶ 16.)

Beginning in 2001, David Duerson began to suffer the symptoms of Chronic Traumatic Encephalopathy ("CTE"), a form of brain damage, allegedly because of the cumulative effect of the concussions he suffered while playing in the NFL. (*Id.* ¶¶ 3-4, 19.) Symptoms included intense headaches, lack of short term memory, language difficulties, vision trouble, and problems with impulse control. (*Id.* ¶ 5.) On February 17, 2011, David Duerson committed suicide by shooting himself in the chest (*Id.* ¶ 1), allegedly as a result of the CTE caused by the injuries he sustained while playing football in the NFL (*Id.* ¶ 20).

Count I of Duerson's complaint alleges that the NFL negligently caused David Duerson's CTE and death by, among other things, failing to educate players about the risks of concussions and

the dangers of continuing to play after suffering head trauma, failing to ensure rapid diagnosis and treatment of David Duerson's condition, and failing to implement policies to prevent David Duerson from returning to play with his injuries. (*Id.* ¶ 23.)

ANALYSIS

The NFL contends that removal is appropriate here because Duerson's action, although explicitly raising only state law claims, actually arises under federal law. *See* 28 U.S.C. §§ 1331, 1441(a). Even when a lawsuit raises only state law claims, the lawsuit can still arise under federal law "if a federal cause of action completely preempts a state cause of action." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 24 (1983). Here, the NFL asserts that § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), completely preempts at least some of Duerson's state law claims, thus creating federal jurisdiction.

Section 301 preempts all state law claims that are "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985). The court may consider any of Duerson's claims that are preempted to be federal claims over which it may exercise jurisdiction. *Sluder v. United Mine Workers of Am., Int'l Union*, 892 F.2d 549, 556 (7th Cir. 1989). It may then exercise supplemental jurisdiction over the rest of Duerson's claims, all of which arise out of the same set of factual circumstances and thus form part of the same case or controversy. *See* 28 U.S.C. § 1337.

The NFL points to two labor agreements upon which it contends Duerson's claims are substantially dependent. Both are collective bargaining agreements ("CBAs") between the National Football League Management Council (the bargaining representative of the football clubs which are members of the NFL) and the National Football League Players Association (the bargaining

representative of NFL players). The first is the 1982 CBA which was in place from 1982 to 1986. (Dkt. No. 41, Ex. 1 ("1982 CBA").) The second is the 1993 CBA which was in effect from 1993 to 2000. (Dkt. No. 41, Ex. 2 ("1993 CBA").) The NFL is not a party to either CBA.

As an initial matter, Duerson contends that neither CBA could possibly be relevant because the allegations of his complaint relate only to 1987 through 1993, years during which the CBAs were not in effect. The complaint itself, however, does not support that argument. Paragraph 11 of Count I of the complaint alleges that "[d]uring his eleven (11) year career . . . DAVE DUERSON sustained at least three (3) documented concussive brain traumas, in 1988, 1990, and 1992, as well as numerous undocumented concussive brain traumas." (Compl., Count I, ¶ 11.) Paragraph 12 then alleges that "[t]he NFL failed to prevent, diagnose and/or properly treat DAVE DUERSON's concussive brain traumas in 1988, 1990 and 1992 and throughout his career." (*Id.* ¶ 12.) Numerous other paragraphs also include the phrase "throughout his career" or phrases similar to it. (*See, e.g.*, *id.* ¶ 14 ("Prior to and during DAVE DUERSON's NFL career . . . ."); *id.* ¶ 15 (same); *id.* ¶ 19 (". . . during his NFL playing career . . ."); *id.* ¶ 22 (". . . during their NFL careers . . ."); *id.* ¶ 23("During his playing career . . .").

Duerson's reply represents that, if the case is remanded to state court, Duerson will amend his complaint to delete the nonessential words "and throughout his NFL career" wherever they appear. Even accepting that representation, however, an amendment would not remove the complaint's necessary reference to periods during which the CBAs were in effect. For example, ¶ 11 would still refer to "numerous undocumented concussive brain traumas" that David Duerson suffered at some unspecified time. More to the point, it is not possible for Duerson successfully to limit the time period to which his complaint refers. To prove the complaint's claims, Duerson must

show that the CTE from which David Duerson suffered was caused by repeated blows to the head during his time as an NFL player. When making that showing, it would be exceedingly implausible to contend that the CTE was caused only by trauma suffered from 1987 through early 1993, and not by trauma from 1983 to 1986 or later in 1993. Any attempt to exclude head trauma suffered on certain dates from the claim would thus likely fail. Accordingly, the CBAs were in effect during at least some of the events alleged in the complaint.

That leaves the question of whether Duerson's claims are "substantially dependent" on an interpretation of any of the CBAs terms. In making that inquiry, the court is mindful that "'not every dispute . . . tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301.'" *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 n.12 (1988) (alteration in original) (quoting *Lueck*, 471 U.S. at 211). Instead, "for preemption to exist, resolution of a claim must require interpretation of a CBA, not a mere glance at it." *In re Bentz Metal Prods. Co.*, 253 F.3d 283, 289 (7th Cir. 2001) (en banc). Determining whether a claim requires interpretation of a CBA necessitates a "case-by-case analysis of the state-law claim as it relates to the CBA." *Id.*

Duerson's first count alleges that the NFL is liable for negligently causing his brain damage and death by failing to fulfil its duty to ensure his safety. Neither party addresses the question of which state's law to apply to Duerson's claim. That inquiry is largely irrelevant, however, because a negligence claim in all states requires, in some form, the existence of a duty, the breach of that duty, causation, and damages. *See, e.g.*, *Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1048 (Ill. 2006) ("To state a cause of action for negligence, a complaint must allege facts that establish the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach."). Moreover, determining the standard of care that the

defendant's conduct must meet to avoid liability usually involves evaluating the reasonableness of the defendant's conduct. *See Restatement (Third) of Torts: Liability for Physical and Emotional Harm* § 3 (2010) ("A person acts negligently if the person does not exercise reasonable care under all the circumstances.").

The NFL contends that evaluating the reasonableness of the NFL's conduct will require interpretation of terms of the CBAs imposing duties on NFL clubs to protect player health and safety. For example, the NFL points to a provision in the 1993 CBA requiring that:

> If a Club physician advises a coach or other Club representative of a player's physical condition which adversely affects the player's performance or health, the physician will also advise the player. If such condition could be significantly aggravated by continued performance, the physician will advise the player of such fact in writing before the player is again allowed to perform on-field activity.

(1993 CBA art. XLIV, § 1.) The NFL is correct, insofar as a court will likely need to determine whether Duerson's concussive brain trauma was "significantly aggravated," within the meaning of the CBA provision, by continuing to play. If so, Duerson's club had a duty to warn him before allowing him to return to the field. If the club had such a duty, it would be one factor tending to show that the NFL's alleged failure to take action to protect Duerson from concussive brain trauma was reasonable.

Other provisions in the CBAs also address player health and safety, and may be interpreted to impose a general duty on the NFL clubs to diagnose and treat ongoing conditions like the concussive trauma that led to Duerson's CTE. For example, the CBAs require the clubs each to have a board-certified orthopedic surgeon as a club physician, to ensure that all club trainers are certified by the National Athletic Trainers Association, and to pay the cost of all medical care rendered by the club staff to the players. (1982 CBA art. XXXI, §§ 1-2; 1993 CBA art. XLIV, §§ 1-2.) Another

provision requires the club physician to perform a pre-season physical examination of each player, and provides for a post-season examination at the player or club's request. (1982 CBA art. XXI, § 5; *see also* 1993 CBA art. XLIV, § 5 (providing only for the pre-season physical).) A court could plausibly interpret those provisions to impose a duty on the NFL's clubs to monitor a player's health and fitness to continue to play football. The court expresses no view on the ultimate validity of that interpretation. If that interpretation were to prevail, however, it would tend to show that the NFL could reasonably rely on the clubs to notice and diagnose player health problems arising from playing in the NFL. The NFL could then reasonably exercise a lower standard of care in that area itself. Determining the meaning of the CBA provisions is thus necessary to resolve Duerson's negligence claim.

In response, Duerson repeatedly insists he can establish the existence of the NFL's duty to keep NFL players reasonably safe without reference to the CBAs. That may be true, but it misses the point. Showing that a duty raised in a state-law tort claim originates in a CBA is certainly sufficient to require preemption. *See United Steelworkers of Am., AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 369 (1990) ("[A] state-law tort action against an employer may be pre-empted by § 301 if the duty to the employee of which the tort is a violation is created by a collective-bargaining agreement . . . ."). But preemption is still possible even if the duty on which the claim is based arises independently of the CBA, so long as resolution of the claim requires interpretation of the CBA. *See Bentz Metal Prods.*, 253 F.3d at 286 (discussing preemption "in other cases, not based directly on a CBA"). Even if the NFL's duty arises apart from the CBAs, therefore, the necessity of interpreting the CBAs to determine the standard of care still leads to preemption.

None of the cases Duerson cites in which courts found no preemption compel a different result. Indeed, "[a]s one would expect in case-by-case analysis, in some situations preemption is found and in others it is not." *Id.* at 289. In *Brown v. National Football League*, for example, the court held that a claim against the NFL for negligently overseeing a referee who threw a penalty flag into the plaintiff's eye was not preempted. 219 F. Supp. 2d 372 (S.D.N.Y. 2002). The court reached that conclusion, however, because the NFL rules and manuals, which the plaintiff cited to determine the scope of the NFL's duty to train and oversee referees, were not part of the CBA. *Id.* at 387. No actual provisions of the CBA were alleged to be relevant to that duty in any way. Here, by contrast, the CBA provisions relating to player medical care and safety are directly relevant to the particular duty at issue.

Similarly, in *McPherson v. Tenn. Football Inc.*, a football player brought a negligence claim against the Tennessee Titans when a mascot in a golf cart ran over him during halftime. No. 3:07-0002, 2007 U.S. Dist. LEXIS 39595 (M.D. Tenn. May 31, 2007). The court held the claim not preempted, largely because there were no provisions of the CBA "concerning its mascots or field safety for half-time activities." *Id.* at *16. Again, here, there are CBA provisions directly applicable to the relevant duty.

In *Jurevicius v. Cleveland Browns Football Co.*, the court held that an NFL player's negligence claim against the Cleveland Browns after he contracted a staph infection at the team's training facility was not preempted. No. 1:09 CV 1803, 2010 WL 846120, at *12-13 (N.D. Ohio Mar. 31, 2010); *see also Bentley v. Cleveland Browns Football Co.*, 958 N.E.2d 585 (Ohio Ct. App. 2011) (presenting a similar fact pattern). The court analyzed the same CBA provisions regarding player health and safety discussed above, but determined that the duties therein related only to a

player's physical condition, and not to the management of the training facility. *Jurevicius*, 2010 WL 846120, at *12 ("This language addresses the duty to warn about a player's physical condition, not a duty to warn about the conditions of training facilities."). In this case, by contrast, Duerson's claims relate to a player's physical condition, and thus are affected by the CBA provisions.

Finally, in *Hendy v. Losse*, an NFL player brought negligence claims alleging that the San Diego Chargers failed to exercise due care when hiring and managing the team physician. 925 F.2d 1470, 1991 WL 17230 (9th Cir. Feb. 12, 1991) (No. 89-55430) (unpublished). The court held that the player's claims were not preempted. *Id.* at *3. It dismissed the argument that the CBA provisions might lower the club's duty to exercise due care by stating that "the argument is in the nature of a defense," which does not lead to preemption under the well-pleaded complaint rule. *Id.* at *2 (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398-99 (1987)). The court in *Hendy* did not, however, justify that conclusion, which is unfounded. Establishing the standard of care that a defendant must meet to avoid liability is an element of a negligence claim that the plaintiff must establish, not a defense. Necessary considerations that suggest a lower standard of care may make it more difficult for the plaintiff to set the standard high enough to succeed on his claim, but they are not affirmative defenses. *See Black's Law Dictionary* 451 (8th ed. 2004) (defining an affirmative defense as "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, *even if all the allegations in the complaint are true*" (emphasis added)). Accordingly, the CBA provisions are relevant to Duerson's claim, not to an affirmative defense.[1]

---

[1] In one other case Duerson raises, the court actually found negligence claims against the NFL and its clubs preempted. *See Stringer v. Nat'l Football League*, 474 F. Supp. 2d 894, 908-09 (S.D. Ohio 2007).

Because Duerson's claims are substantially dependent on the interpretation of CBA provisions, his negligence claim is preempted. Federal jurisdiction thus exists over that claim, and the court can exercise supplemental jurisdiction over the rest of Duerson's claims. *See* 28 U.S.C. § 1337. Accordingly, the court has jurisdiction over the entire matter.

## CONCLUSION

For the foregoing reasons, Duerson's motion to remand (Dkt. No. 29) is denied. Further proceedings in this case are stayed pending further action by the Multidistrict Litigation Panel in MDL 2323. Counsel are requested to notify the court by filing a notice for a status report in this case following any action.

ENTER:

_____

JAMES F. HOLDERMAN

Chief Judge, United States District Court

Date: May 11, 2012